773 So.2d 421 (2000)
James Walter HOVER, II, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-CA-01898-COA.
Court of Appeals of Mississippi.
December 12, 2000.
*422 Percy Stanfield, Beverly D. Poole, Jackson, Attorneys for Appellant.
Office of the Attorney General by John R. Henry Jr., Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. James Hover pled guilty to the crime of a drive-by shooting. Later he petitioned for post-conviction relief, but it was denied. He appeals arguing that there was an insufficient factual basis to support the plea and that he received ineffective assistance of counsel. We find no merit to either argument and affirm.

FACTS
¶ 2. On January 3, 1996, James Hover called John McClelland in order to purchase marijuana. During the course of their conversation, Hover alleged that a man named Jeremy Spurlock was saying to various people that McClelland owed Spurlock money. McClelland became upset and asked Hover to pick him up and drive him to Richard Caffey's house where *423 he thought he would be able to confront Spurlock.
¶ 3. After some intervening stops and confrontations, Hover drove McClelland to Caffey's house. There Spurlock and several others came out of the house onto the front porch. Caffey soon arrived in a separate vehicle. The group gathered on the porch and engaged in a vigorous discussion. At some point McClelland became angry at something Caffey said and a physical confrontation ensued between the pair. McClelland threw Caffey to the ground and announced that he would return the following Saturday to collect his money from Caffey and Spurlock.
¶ 4. McClelland told Hover to drive him back to his house so that he could get something. Hover alleged that he understood the purpose was so that McClelland could gather what he needed in order to spend the night at his wife's house. Hover testified that when McClelland emerged from his house and returned to the car, a handgun was visible from McClelland's jacket. The State at the guilty plea hearing revealed that McClelland had informed the police that he told Hover to drive him home so that he could get a gun. A 1999 affidavit from McClelland attached to the post-conviction relief petition also makes that assertion.
¶ 5. The pair then started driving towards the house of McClelland's wife. When they got within sight of Caffey's house, they saw that the group was still standing outside. McClelland told Hover to drive by the house. As Hover and McClelland passed, the others began yelling at them. McClelland asked Hover to stop the car. When Hover did so, McClelland, Caffey and Spurlock began yelling at each other. Hover testified that McClelland then told him that he was about to scare them. The driver's side of the car was facing the house where Caffey and Spurlock were standing. A substantial difference between Hover's story and that in McClelland's statement to the police occurs at this point. Hover says that McClellandsitting on the passenger's side of the car away from the house "rolled his window down and stuck his arm out and fired it over the car." McClelland however told the police that he reached across Hover and shot out the driver's side window. Hover claimed that the weapon was discharged upward into the air and not towards those outside Caffey's house. A shell casing matching McClelland's gun was found at the scene but no bullet was recovered. No one in the group was injured and there was no damage to Caffey's house. McClelland's 1999 affidavit also asserted that he fired into the air to scare those outside the house and did not aim the gun at the house or at anyone else.
¶ 6. After the shot was fired, Hover drove back to McClelland's house where McClelland dropped off the gun. The two then proceeded to a gas station. While en route an officer responding to a call from Caffey about a drive-by shooting got behind Hover's car. McClelland instructed Hover not to stop because he had a bag of marijuana in his jacket. A short chase ensued that ended when Hover stopped alongside the road. During the ensuing encounter Hover was shot in the face.
¶ 7. Hover was charged with possession of marijuana and a drive-by shooting. On September 6, 1996, he pled guilty to the charge of a drive-by shooting while the marijuana charge was dropped. Hover's suspended sentence was later revoked for his being charged with several misdemeanors in Arkansas. Hover then petitioned for post-conviction relief. The Court examined the original proceedings, including the transcript of the guilty plea hearing. In an opinion quite helpful to this Court, an exhaustive review of the allegations was made with detailed references to the transcript of the prior proceedings. The trial court denied the relief. Hover's appeal has been deflected here.

DISCUSSION
¶ 8. A guilty plea can only be accepted if the trial court determines that *424 there is enough evidence that the State, if put to the test, could prove the defendant guilty of the crime charged. United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). A factual basis for the crime in which the defendant is charged is an "essential part of the constitutionally valid and enforceable decision to plead guilty." Reynolds v. State, 521 So.2d 914, 915 (Miss.1988). Absent such a basis being shown, the plea should not be accepted. Lott v. State, 597 So.2d 627, 628 (Miss.1992).
¶ 9. A Uniform Circuit and County Court Rule provides the guidelines for the taking of guilty pleas. URCCC 8.04(3). That rule requires that a trial court determine that a guilty plea is voluntarily and intelligently made and that there is a factual basis for the plea before the trial court can accept it. The trial court must have "substantial evidence that the accused did commit the legally defined offense to which he is offering the plea." Corley v. State, 585 So.2d 765, 767 (Miss. 1991). "[W]hat facts must be shown are a function of the definition of the crime and its assorted elements." Id.
¶ 10. We first look at the elements of the crime of a drive by shooting:
A person is guilty of a drive by shooting if he attempts, other than for lawful self defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle.
Miss.Code Ann. § 97-3-109(1) (Rev.2000). Since no injuries resulted from the discharge of the firearm, in order for the trial court to accept Hover's guilty plea it would have to determine that there would be enough evidence for a jury to find that the gun was fired from the vehicle with the intent to cause serious bodily injury.
¶ 11. We have already detailed the evidence. Hover claimed that McClelland reached out the passenger side window then shot his weapon back across the roof of the car. McClelland himself gave a statement that he leaned across Hover and shot out the driver's side window. We have also recounted the testimony of the seriousness of the altercation that led to McClelland wanting to go to his house to get a gun. The State argued to the court at the guilty plea hearing that this evidence would permit a jury to decide beyond a reasonable doubt, based on inferences, that McClelland physically would have a difficult time firing high in the air after leaning over the driver to discharge the weapon out the driver's window, that his clearly being incensed by what occurred earlier at Caffey's house made firing the gun into the air unbelievable, and that therefore an attempt to cause serious bodily injury was made when McClelland fired the gun.
¶ 12. There definitely was contrary evidence, but that does not invalidate the guilty plea. Hover at the hearing stated that he wished to make a plea that denied guilt of some of the elements of the offense, but accepted the consequences voluntarily and intelligently because of a reasonable fear that if he went to the jury he would be found guilty. Admission of guilt is not a constitutional requirement for a guilty plea. What is required is an intelligent and voluntary plea and an independent evidentiary suggestion of guilt. Reynolds v. State, 521 So.2d 914, 917 (Miss.1988). The United States Supreme Court held such pleas to be valid. North Carolina v. Alford, 400 U.S. 25, 38-39, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
¶ 13. Both Hover and McClelland's versions of the events were presented at the guilty plea hearing. The State's case was explained, including the inferences that would be argued to a jury. Hover, with the assistance of counsel, determined knowingly and voluntarily to plead guilty. Looking at the entire record, we find a valid Alford plea. We certainly are not suggesting that there is only one result *425 that a jury could have reached based on this evidence. If a guilty plea could be sustained when post-conviction relief is requested only when the evidence of guilt was undisputed, then such pleas would be fragile indeed. We are holding that there was a sufficient evidentiary suggestion of guilt. The State may well have persuaded a jury to convict. Hover decided not to risk that and made a plea arrangement instead that led to a suspended sentence. Except for the issue of ineffective assistance of trial counsel that we will discuss next, we find no defect in the plea.

Ineffective assistance of counsel
¶ 14. In his post-conviction relief petition, Hover argued that his 1996 trial counsel encouraged him to admit that he knew about McClelland's gun prior to its use at Caffey's house. The attorney told him that otherwise, or so Hover suggests, the trial court would not accept the plea. The argument is also made that Hover's counsel did not adequately investigate the crime.
¶ 15. Whether Hover's attorney encouraged him to tell the truth so that an adequate basis to accept the plea would exist, which was a necessary prerequisite to gaining the benefit of the favorable sentence arrangement, or instead to lie is a factual choice that neither the trial court nor we on appeal can make. McClelland both in his 1996 statement to police and in his 1999 affidavit that Hover himself included in his petition for post-conviction relief, asserted that Hover knew about the gun.
¶ 16. As to a more thorough investigation, the record does not reveal anything that trial counsel clearly overlooked that would have been helpful to prove innocence. There is contested evidence, including now a statement from the Spurlock who was at the center of the original 1996 dispute and was one of the people standing out the Caffey house, that McClelland fired into the air and not at the house. Parts of Spurlock's statement are inconsistent with both McClelland and Hover's version of events, including Spurlock's assertion that it was the passenger's side window that was facing the house when the gunshot occurred. It may be remembered that McClelland's reaching across the driver to fire out the driver's side window at the house is part of the basis for the inference that he was not firing high into the air. Whether Spurlock would have made the same statements in 1996 is unknown. No evidence was introduced regarding whether Hover's 1996 counsel did or did not talk to Spurlock. We do know that at the 1996 guilty plea hearing Hover said that he was satisfied with his attorney's handling of the case. Evidence of what Spurlock is willing to say now is not the basis on which to decide that an attorney in 1996 had failed to investigate the case. The evidence is simply absent from the record to support that there was an inadequate investigation.
¶ 17. When Hover was considering whether to enter an Alford plea, he usefully would have balanced the chances of conviction and resulting sentence with what his attorney had acquired for him as part of a plea arrangement. We cannot find any prejudice to Hover based on his allegations concerning his counsel. Therefore he has not shown constitutionally inadequate counsel. That requires the person convicted to show how counsel's performance was deficient and that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 18. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.